UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:19-mj-03072 Becerra

UNITED STATES OF AMERICA

v.

CRISTIAN GERMAN BARRERA,

                Defendant.                   /

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  ✓ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY:  _____
Ricardo A. Del Toro
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.    957585
99 N.E. 4th Street
Miami, Florida 33132
Tel:      305-961-9182
Fax:     305-536-4675
Email:   Ricardo.Del.Toro@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
| v. | ) |
| | ) Case No. 1:19-mJ-03072 Becerra |
| CRISTIAN GERMAN BARRERA, | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 2017 - June 2018__ in the county of __Palm Beach & Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371; | Conspiracy to Commit Offense Against the United States; and |
| 22 U.S.C. § 2778(c) | Attempt to Illegally Export Defense Articles Without a License. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Miguel A. Vilches, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **7.3.19**

*Judge's signature*

City and state: Miami, Florida

Hon. Jacqueline Becerra, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Miguel A. Vilches, Special Agent (SA) of Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I have been a Special Agent with HSI for over sixteen (16) years and during my career I have participated in, and directed numerous criminal investigations involving the illegal exportation of military and defense articles from the United States. I have also received formal training and have extensive on-the-job experience in laws and regulations relating to weapons smuggling and in the international trafficking of defense articles. As a result of my training and experience, I have specific knowledge of the means and methods used by weapons traffickers and weapons-trafficking organizations (hereinafter "WTO") to communicate with each other, to purchase, transport, store and distribute weapons, and to conceal profits generated from those transactions.

2. I know, through training and experience, that: (a) it is common for weapons traffickers to utilize numerous concealment methods within various shipment channels to transport weapons, munitions, and proceeds for the export, sale, and distribution of weapons and munitions; (b) it is common for weapons traffickers to conceal weapons and munitions within freight and utilize shipment consolidators, freight forwarders, and commercial carriers (land, sea and air); (c) it is common for weapons traffickers to conceal and comingle weapons and munitions within other shipments to avoid customs and carrier shipment inspections in order to export weapons and munitions, in violation of 18 U.S.C. § 554, smuggling goods from the United States; 13 U.S.C. § 305, failure to file a Shippers Export Declaration; 22 U.S.C. § 2778, illegal export of defense

articles without a license; 18 U.S.C. § 1343, wire fraud; and 18 U.S.C. § 371, conspiracy to commit offense or to defraud United States.

3. The facts alleged in this affidavit are based on my personal knowledge and observations, my training and experience, and information obtained from other law enforcement officers. This affidavit does not include every fact known to me concerning this investigation. I have included only those facts and circumstances that I believe are sufficient to establish probable cause to show that Cristian German BARRERA ("BARRERA") committed the offenses of conspiracy and attempt to illegally export from the United States to Argentina defense articles, namely, hundreds of parts for AR-15 assault rifles, without a license, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778(c).

## RELEVANT STATUTES

4. The Arms Export Control Act ("AECA") and its attendant regulations, the International Traffic in Arms Regulations ("ITAR") (22 C.F.R. §§ 120-130), require a person to apply for and obtain an export license from the Department of State, Directorate of Defense Trade Controls ("DDTC"), before exporting from the United States arms, ammunition, or articles of war, which are all classified as defense articles, (22 U.S.C. §§ 2778(b)(2) and 2794(3), and 22 C.F.R. § 120.1). It is a crime for anyone to willfully violate any provision of 22 U.S.C. § 2778 or any rule or regulation issued under that section. *See* 22 U.S.C. § 2778(c). Specifically, it is a crime for any exporter to export a defense article to another country, willfully failing to obtain an export license. *See* 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.1(a)(1). Pursuant to the ITAR, it is a violation for a person to willfully conspire to export or to cause to be exported any defense article without a license. *See* 22 C.F.R. § 127.1. It is also unlawful for any person to "knowingly or willfully attempt, solicit, cause, or aid, abet, counsel, demand, induce, procure, or permit the

commission of any act prohibited by 22 U.S.C. § 2778," or any regulation issued there under. 22 C.F.R. § 127.1(e).

5. In the application for an export license, an exporter is required to state, among other things, the nature of the defense article to be exported, the end recipient of the defense article, and the purpose for which the defense article is intended. The DDTC considers these factors in determining whether the export of the defense article would further the security and foreign policy interests of the United States or would otherwise affect world peace.

6. The Department of State, with the concurrence of the Department of Defense, designates articles as "defense articles" on the United States Munitions List ("USML"), which are subject to these licensing requirements. *See* 22 C.F.R. § 120.6. No defense article could be exported or otherwise transferred from the United States to a foreign country without prior license or written approval from DDTC. 22 C.F.R. §§ 123.1(a), 127.1(a)(1). The ITAR also prohibited re-exports, transfers, transshipments, and diversions from foreign countries of previously exported defense articles without United States Department of State authorization. 22 C.F.R. § 123.9(a).

7. Title 18, United States Code, Section 371 provides, in relevant part: "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

## PROBABLE CAUSE

8. According to law enforcement record checks, between June 2017 and June 2018, BARRERA shipped approximately nineteen (19) U.S. Postal Service (USPS) shipments from Palm Beach County, Florida, to Buenos Aires, Argentina. Three (3) of these shipments were

seized by United States Customs and Border Protection (CBP) Officers at the Foreign Mail Facility in Miami, Florida. These shipments are specifically described in the ensuing paragraphs.

9. On or about May 15, 2018, USPS parcel bearing lading number CH036945872US was selected for examination by CBP at the Foreign Mail Facility in Miami, Florida. The shipment listed its contents as "Bicycle Spare". During a border inspection, CBP agents discovered: five (5) AR-15 stripped lower receivers, five (5) AR-15 stripped upper receivers, four (4) AR-15 handguards, eighteen (18) AR-15 buttstocks and three (3) .22 caliber magazines. The shipper was listed as BARRERA with an address in North Palm Beach, Florida and the SHIPMENT was addressed to "Roman RAGUSA" in Argentina.

10. On or about May 29, 2018, two additional shipments were selected for examination by CBP at the Foreign Mail Facility in Miami, Florida. The first May 29 shipment included USPS parcel bearing lading number CH039269734US and the contents were described as "Bicycle Spare". During a border inspection, agents discovered: thirty (30) AR-15 stripped lower receivers, four (4) AR-15 hand guards, ten (10) AR-15 extension tubes, six (6) AR-15 trigger kits, six (6) AR-15 pistol grips and ten (10) .223 forty (40) round magazines. The shipper was listed as BARRERA with an address in North Palm Beach, Florida, and this shipment was addressed to "Roman RAGUSA" in Argentina.

11. The second May 29 shipment included USPS parcel bearing lading number CH039271273US and its contents were also described as "Bicycle Spare". During a border inspection, CBP agents discovered: twelve (12) AR-15 stripped lower receivers, four (4) AR-15 hand guards, twenty (20) AR-15 extension tubes, twenty-five (25) AR-15 trigger kits, twenty-five (25) AR-15 pistol grips, and ten (10) bolt carrier groups. The shipper was listed as BARRERA

4

with an address in North Palm Beach, Florida, and this shipment was also addressed to "Roman RAGUSA" in Argentina.

11. The weapon parts seized on May 15 and 29 are regulated under ITAR and listed as defense articles in Category I of the USML, thus requiring a Department of State, DDTC, license before export.

12. On or about June 26, 2019, HSI SA Chris Durant, along with HSI Task Force Officer Lucas Morales and United States Postal Inspector Hugo Cuellar met with BARRERA in Palm Beach County, Florida. During the meeting, the Agents asked BARRERA if he was willing to travel to the HSI office in West Palm Beach, Florida for an interview. BARRERA voluntarily agreed and was transported by the Agents to the HSI office.

13. Upon arrival, BARRERA was read his constitutional rights, which he waived and agreed to answer questions without the presence of an attorney. BARRERA also initialed and signed an HSI Statement of Rights form in Spanish, acknowledging his waiver of the rights to silence and an attorney.

14. During the interview, which was conducted in Spanish and audio recorded, BARRERA stated that he knew the purpose of the interview, since earlier in the day he had received a telephone call from his brother, who advised that their mother's home was being raided by police in Argentina.

15. In relation to the weapon seizures, BARRERA stated that several years ago his friend named "Ignacio", whom he knew as "Nacho", asked if he was interested in making extra money. Ignacio asked BARRERA to contact an individual in Argentina regarding this proposal. After the recorded interview, BARRERA reviewed with the agents the contacts on his cellular telephone and recalled that "ROMAN" was the individual's name in Argentina.

16. BARRERA stated that on several occasions ROMAN instructed him to meet with an individual in Aventura, Florida to retrieve multiple boxes, which BARRERA then repackaged into larger boxes at his home in Palm Beach County, Florida. BARRERA stated that he knew the individual in Aventura, Florida as "ROGER", and also called him "El Gringo". BARRERA stated that on two or three occasions, ROGER met with BARRERA in Palm Beach County to drop off packages for subsequent shipment.

17. BARRERA stated that ROMAN instructed him to label the shipments as "Bicycle Spare". However, BARRERA stated that he knew the packages actually contained weapon parts. BARRERA stated that he would then drop off the shipments at two separate post offices in Palm Beach County, Florida, for export to ROMAN in Argentina. BARRERA stated that he delivered packages in this fashion approximately five (5) or six (6) times and that some of the deliveries contained more than one shipment. BARRERA also acknowledged that he was aware that exporting firearm parts required a license and that he was committing a violation.

18. BARRERA also stated that ROMAN once asked him to purchase firearm parts. BARRERA stated that ROMAN provided him with an address in Florida City, Florida, and instructed him to purchase the firearm parts at that location. However, BARRERA stated that he rejected ROMAN's request.

19. BARRERA also stated he received wire transfers from Brazil for compensation and shipping costs. BARRERA stated that the shipping costs were generally between $300.00 and $400.00, and payment for his compensation was typically between $500.00 and $600.00 per shipment.

20. Based upon the foregoing, probable cause exists to believe that BARRERA did knowingly and willfully conspire and attempt to export from the United States to Argentina,

without a license defense articles, namely, hundreds of AR-15 assault rifle parts, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778(c).

FURTHER AFFIANT SAYETH NAUGHT.

_____
Miguel A. Vilches, Special Agent
Homeland Security Investigations

Sworn and subscribed to me this **3rd** th day of July 2019.

_____
HON. JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE

7